1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   MELISSA BRINCKERHOFF,

11            Plaintiff,

12      v.                                  NO. CIV. S-10-0023 MCE GGH

13   TOWN OF PARADISE,

14            Defendants.          ORDER

15   _____/

16            On November 4, 2010, the parties, by and through their counsel, were heard in

17   connection with plaintiff Brinckerhoff's amended motion to compel production of documents

18   and for sanctions, and defendant Town of Paradise's ("Town") motion to compel Rule 26

19   disclosures, for protective orders, and for sanctions.  Alden Knisbacher appeared on behalf of

20   plaintiff.  Douglas Thorn appeared for defendant.  After hearing, the court issues the following

21   order.

22   BACKGROUND

23            Plaintiff filed the instant action on January 31, 2009, against the Town for

24   employment discrimination after she was released from her probationary employment with the

25   Town's fire department.  Even though the Town has a volunteer fire department, these

26   firefighters enjoy various benefits and some pay as well as protection under Title VII, FEHA, and

1

the town's policies.  Plaintiff was a volunteer firefighter who started employment in October 2001 until October 25, 2006 when she was appointed to a full time civil service position for twelve months probationary status.  Plaintiff's probation was extended until January 15, 2009 because she took off periods of work for medical and personal reasons.  Plaintiff was terminated from probation on January 12, 2009.  She claims her probation was extended in order to discriminate against her because of her disability based on a back injury.  Plaintiff alleges a hostile work environment under Title VII and state law (Cal. FEHA), gender discrimination (Title VII and Cal. FEHA), disability discrimination (ADA and Cal. FEHA), retaliation (Title VII), wrongful termination (Cal. FEHA and Cal. Govt. Code § 910), and failure to prevent discrimination (Cal. FEHA).  Plaintiff seeks damages and injunctive relief including reinstatement.

DISCUSSION

It must be noted that the parties made review of these motions very difficult for the undersigned in submitting more than one joint statement and failing to cooperate in drafting and submitting the joint statement.  From failing to include a table of contents to submitting multiple copies of the same document with the order of contents switched around, to filing numerous extraneous pleadings, both parties have exhibited unprofessional conduct which is unacceptable.  In future, the court will decline to hear any discovery matter where the Federal and Local Rules are not strictly followed.

I. DEFENDANT'S MOTION TO COMPEL

Defendant's motion seeks to compel Rule 26 disclosures.  It also seeks to impose certain protective orders.

A. Rule 26 Disclosures

Defendant claims that plaintiff's amended disclosure, as with the first disclosure, did not include proper identification of witnesses to support her claims, including the failure to provide addresses and phone numbers.  Defendant also contends that plaintiff failed to disclose

1  which claim is linked to the individual disclosed.

2          Rule 26 of the Federal Rules of Civil Procedure requires that initial disclosures

3  contain the following information:

4          (i) the name and, if known, the address and telephone number of
           each individual likely to have discoverable information - along
5          with the subjects of that information - that the disclosing party may
           use to support its claims or defenses, unless the use would be
6          solely for impeachment; ...

7  Fed. R. Civ. P. 26(a)(1)(A)(I).

8  Pursuant to this rule, plaintiff certainly should have provided the addresses and phone numbers of

9  potential witnesses to the extent known.

10         In regard to information held by the individuals disclosed, plaintiff has sufficiently

11  described the discoverable information pertaining to each named individual.  Thorn Supp. Decl.,

12  Ex. B (dkt. # 29).  Any information not provided by plaintiff as part of her initial disclosures may

13  be obtained by traditional discovery methods.  As alluded to by the term "initial," this disclosure

14  is only the information known by the party at an early point in the case before formal discovery

15  begins.  As explained at the hearing, Rule 26 disclosures should not be amended throughout the

16  case unless information becomes available later and would have been subject to the initial

17  disclosure requirement.  Rule 26 is intended for disclosure of information that is not produced

18  through formal discovery, but becomes separately known to a party.[1]

19         Plaintiff shall supplement her amended disclosures with addresses and phone

20  numbers to the extent known.  Defendant's motion in regard to the content of the Rule 26

21  disclosures is denied in all other respects.

22         B.  Proposed Protective Orders

23         Defendant requests the following protective orders: (1) prohibit plaintiff's counsel

24  \\\\\

25  _____

26         [1]  Indeed, Rule 26 (e)(1)(A) expressly disclaims the need to supplement with respect to
    information that has been acquired in formal discovery.

1  from annoying, embarrassing, or harassing defendant and witnesses;[2] (2) prohibit plaintiff from

2  using evidence which has not been disclosed under Rule 26(a); (3) prohibit non-party witnesses

3  who have not been deposed from attending deposition proceedings; and (4) require that all

4  discovery take place in the town of Paradise unless otherwise stipulated or ordered.[3]

5        1.  Prohibition from Annoying, Harassing or Embarrassing Conduct by

6  Plaintiff's Counsel at Depositions

7        The undersigned has reviewed the deposition transcript of defendant's witness,

8  Captain Lawrie, which defendant has provided as an example of harassing conduct by plaintiff's

9  counsel.  Although counsel's actions were at times argumentative and inappropriate, they did not

10  rise to the level of obstructing the proceedings.  Therefore, defendant's motion is denied in this

11  regard.

12        2.  Use of Undisclosed Evidence

13        In regard to precluding use of undisclosed evidence, defendant is referring to an

14  email from Mr. Thorn to Messrs. Knisbacher and Sorgen, dated August 21, 2010, which reflects

15  his thoughts about the merits of the case, and states that Captains Hasek's and Lawrie's

16  depositions will not "in any way support [plaintiff's] claims of discrimination," and "I think you

17  will be very disappointed in what they have to say."  Joint Statement Re: Plaintiff's Mot. to

18  Compel, Ex. 7 (Dkt. # 24.)   Thorn copied Captains Haskek and Lawrie on this email.  Defendant

19  now argues that plaintiff tried to use it at Lawrie's deposition without first disclosing it under

20  Rule 26.  Rule 26(a)(1)(A)(ii) requires initial disclosures of documents a party intends to use to

21  support its claims or defenses, "unless the use would be solely for impeachment...."  In this case,

22  plaintiff attempted to use this email for impeachment purposes only.  Therefore, plaintiff was not

23

24        [2] Defendant's request to require plaintiff to timely meet and confer with defendant has
   been withdrawn.

25

26        [3] Defendant's request to limit the scope of permissible discovery will be addressed in
   plaintiff's motion because it relates to electronic discovery.

1    required to disclose it.  Defendant's motion is denied as to this category. [4]

2            3.  Exclusion Order

3            The parties appear to have stipulated to an order barring a non-party witness from

4    attending deposition proceedings when that witness has not yet been deposed.  Defendant's

5    motion is therefore denied as moot in regard to this request.

6            4.  Place for Discovery

7            Defendant has requested that all discovery take place in Paradise because that

8    town is struggling financially and must manage its resources in this case.

9            Rule 45 requires that non-party depositions take place within 100 miles from the

10   deponent's residence.[5]  Fed. R. Civ. P. 45(c)(3)(A)(ii).  A party may be deposed in any location

11   designated by the deposing party, "subject to the court's power to grant a protective order."

12   W.W. Schwarzer, A.W. Tashima & J. Wagstaffe, Federal Civil Procedure Before Trial §

13   11:1456.  However, in the case of defendant depositions and other discovery, a general, common

14   sense presumption exists which point to having depositions and physical productions/inspections

15   involving the defendant at the defendant's residence or principle place of business.  E.I. Dupont

16   and Co. v. Kolon Ind. Inc., 268 F.R.D. 45, 54 (E.D. Va. 2010); Deeger v. Gillis, 2010 3732132

17   (N.D. Ill. 2010).  Based on plaintiff's choice to retain counsel in San Francisco, and the lack of

18   any more convenient place in this district, defendant's motion is granted in this regard.  All

19   depositions and production of discovery by both parties and non-parties shall take place in

---

21      [4] This "chest-beating" e-mail is harmless enough when sent to counsel alone, although
     one could question the necessity for it.  However, when sent to the soon to be deposed witness, it
22   could be viewed as a message/warning not to testify in a manner which hurts the sender's client.
     There is no further evidence submitted that the recipient interpreted the message in this manner
23   or that the sender meant it to send a message.  Therefore, the undersigned will not find that the
     witness was "coached" as argued by plaintiff's counsel.  However, had the e-mail been more
24   specific concerning the substance of what was to be the subject of testimony, the undersigned
     might have arrived at a different conclusion.

25
26      [5] According to Google Maps, Paradise is approximately 170 miles away from San
     Francisco.

1   Paradise unless otherwise stipulated by the parties.

2         C.  <u>Sanctions</u>

3         Defendant seeks sanctions against plaintiff and her counsel for having to bring

4   this motion.  As both parties were not justified in their actions, neither party's request for

5   sanctions will be granted.

6        II.  <u>PLAINTIFF'S MOTION TO COMPEL</u>

7         Plaintiff seeks to compel proper responses to her request for production of

8   documents.  Defendant responded to the requests by stating that it would comply with the request

9   subject to four pages of exceptions (objections) which it listed in response to request number 1.

10  Defendant stated, "[d]efendant will comply with this request subject to the exceptions and

11  limitations set forth below and subject to the requirements of applicable law rather than the

12  instructions and definitions set forth in the requests."  (Knisbacher Decl., Ex. 2, dkt. #24.)  For

13  every request after number 1, defendant responded to the request simply with the statement,

14  "Please refer to response to Document Demand No. 1 above."  Defendant's responses do not

15  state what documents will be produced, and for which requests they will be produced.  It cannot

16  be determined from these responses exactly with what defendant is going to comply.

17  Furthermore, four pages of objections, most of which are boilerplate, are not permitted by the

18  rules.  Defendant's responses are decidedly improper.  Nevertheless, defendant did produce the

19  documents as kept in the ordinary course of business.  Plaintiff concedes that the production

20  included cover sheets indicating to which requests each stack of documents was responsive.

21  Knisbacher Decl., ¶ 16.  Except as later specified herein, plaintiff does not indicate that she is

22  aware of specific documents, or categories of documents which have not been produced.

23  Moreover, the number of requests was somewhat overbearing, and destined to result in many

24  overlapping instances where certain documents were responsive to multiple requests.  The court

25  will not order a further response on this basis.

26  \\\\\

### A. Who is a Party

Certain of the discovery disputes centers about what personnel associated with an entity defendant are considered the "party" for purposes of discovery response including assertion of privilege. The court next considers this issue.

#### 1. Parties for Purposes of Attorney-Client Privilege

Plaintiff's motion raises the issue of claims of privilege by Paradise and which individuals qualify as defendants for whom Paradise can raise a privilege. Also necessary for determination is whether an individual must be subpoenaed under Rule 45 as a non-party or may be subject to Rule 34 as a party for purposes of document production. Resolution of these issues depends on the proper characterization of the relationships of the various individuals affiliated with defendant. This preliminary determination must be made before plaintiff's motion may be addressed.

The attorney-client privilege may be asserted by not only a corporation but by an organization or other entity. Newport Pacific Inc. v. County of San Diego, 200 F.R.D. 628, 635 (S.D. Cal. 2001). The sole client is the entity. Montgomery v. Etreppid Technologies, LLC, 548 F. Supp.2d 1175, 1184 (D. Nev. 2008). In the case of a client that is an entity, although the attorney-client privilege normally extends only from counsel to top management, "under certain circumstances, communications between counsel and lower-level employees are also covered." Commodity Futures Trading Commission v. Weintraub, 471 U.S. 343, 348, 105 S.Ct. 1986, 1991 (1986), citing Upjohn Co. v. United States, 449 U.S. 383, 101 S.Ct. 677 (1981).[6]

Courts generally assume that the attorney client privilege extends to municipal corporations. Reed v. Baxter, 134 F.3d 351, 356 (6th Cir. 1998); In re Grand Jury Subpoena (United States v. Doe), 886 F.2d 135 (6th Cir. 1989). Although similar in many ways to the

---

[6] Although communications are protected, facts are not covered. Just because a fact was incorporated into a communication with counsel, a client cannot refuse to disclose it. Lopes v. Vieira, 688 F.Supp.2d 1050, 1059 (E.D. Cal. 2010).

1   privilege granted to corporations, there is one important distinction.  "The governmental

2   privilege stands squarely in conflict with the strong public interest in open and honest

3   government."  Reed, 134 F.3d at 356.  On the other hand, public officials need legal advice in

4   order to serve the public interest because they have a duty to respect legal limitations on their

5   authority.  In re County of Erie, 473 F.3d 413, 419 (2nd Cir. 2007).  "[T]he traditional rationale

6   for the [attorney-client] privilege applies with special force in the government context.  It is

7   crucial that government officials, who are expected to uphold and execute the law and who may

8   face criminal prosecution for failing to do so, be encouraged to seek out and receive fully

9   informed legal advice."  Id., quoting In re Grand Jury Investigation, 399 F.3d 527, 534 (2nd Cir.

10  2005).

11          When these distinctions are considered with the general admonition given in

12  regard to corporations, that their large numbers of agents and documents creates a larger zone of

13  silence, the extent of the privilege must be very carefully considered.

14              In the corporate context ... it will frequently be employees
            beyond the control group as defined by the court below–"officers
15          and agents ... responsible for directing [the company's] actions in
            response to legal advice"–who will possess the information needed
16          by the corporation's lawyers. Middle-level-and indeed
            lower-level-employees can, by actions within the scope of their
17          employment, embroil the corporation in serious legal difficulties,
            and it is only natural that these employees would have the relevant
18          information needed by corporate counsel if he is adequately to
            advise the client with respect to such actual or potential difficulties.
19

20  Upjohn Co., 449 U.S. at 391, 101 S.Ct. 677.  See also Admiral Ins. Co. v. District Court, 881

21  F.2d 1486, 1492 (9th Cir. 1989) (following Upjohn and reiterating that the privileged matters

22  must be within the scope of the employee's duties, and employee must be aware that information

23  he or she furnishes will enable attorney to provide legal advice to corporation).  Therefore, it is

24  important to note that it is not only the individual who is in a position to control the entity, but

25  may also be the employee who is in the position to provide information to the lawyer to assist

26  him in properly giving sound legal advice.  Lewis v. Wells Fargo & Co., 266 F.R.D. 433, 441

1   (N.D. Cal. 2010).  The communication must be made at the direction of superiors in order to

2   secure legal advice.  U.S. v. Chen, 99 F.3d 1495, 1502 (9th Cir. 1996).  Nevertheless, the

3   privilege will not be extended so far as to frustrate the efforts of those who seek to discover

4   corporate activity.  Independent Petrochemical Corp. v. Aetna Casualty & Sur. Co., 654 F. Supp.

5   1334, 1365 (D.D.C. 1986).  For example, where the interests of the city executives were different

6   from the city council members, and the council members did not act as clients meeting with their

7   attorney but rather met as third parties, the privilege did not extend.  Reed v. Baxter, 134 F.3d

8   351, 357 (6th Cir. 1998).  But see In re Grand Jury Subpoena (United States v. Doe), 886 F.2d

9   135 (6th Cir. 1989) (finding that Detroit City Council was client of city attorney).

10              Nevertheless, employees who are not in the control group may have no authority

11   to waive the privilege.  Galli v. Pittsburg Unified School Dist., 2010 WL 4315768, * 5 (N.D. Cal.

12   2010) (finding that district administrator, a senior level District employee, not member of control

13   group, was not given authority to waive privilege).  This principle also applies to former

14   employees.  "[S]ince a corporate employee cannot waive the corporation's privilege, that same

15   individual as an ex-employee cannot do so."  Id., citing Chen, 99 F.3d at 1502.  The same

16   rationale applied in Upjohn applies to former employees.  Chen, 99 F.3d at 1502, quoting In re

17   Coordinated Pretrial Proceedings, etc., 658 F.2d 1355, 1361 n. 7 (9th Cir. 1981).  See also

18   Newport Pacific Inc., 200 F.R.D. at 635 (finding communication of both current and former

19   employees protected by attorney-client privilege).  Cf. Hynix Semiconductor, Inc. v. Rambus

20   Inc., 2008 WL 397350, *3 (N.D. Cal. 2008) (questioning whether paid consultant witnesses who

21   were former employees would still be clients for the attorney-client privilege).  Dissident

22   directors are not considered management because their actions conflict with the will of

23   management.  Montgomery, 548 F.Supp.2d at 1184.

24              In a factually similar case, Caucasian firefighters sued the city under Title VII for

25   promoting an African American firefighter to Captain without considering the qualifications of

26   the other candidates.  Reed v. Baxter, 134 F.3d at 357-58.  The city manager and fire chief were

9

the agents responsible for the promotion.  The fire chief devised and applied the promotional

policy.  The city manager made the promotion based on the fire chief's recommendation.  The

city council members were not involved in the promotion and met with the city attorney not to

obtain advice, but to inquire into the basis for the promotion and to participate as third parties.

Therefore, the council members interests were potentially adverse to those of the city manager

and fire chief, whose actions threatened to expose the city to liability.   Based on these facts, the

council members' communications were not protected by the attorney client privilege.  Id.  The

communications of the fire chief and the city manager were privileged, however.

        In Montgomery v. Leftwich, Moore & Douglas, 161 F.R.D. 224, 226 (D.D.C.

1995), certain defendants were not protected by the privilege because they could not show that

the law firm represented them, and documents showed that the firm represented only one named

defendant.

        In this case, defendant submitted a letter after the hearing, dated November 4,

2010, indicating in part that the Town Attorney does not supervise any Town employees, but is

an independent contractor.  Individuals designated to assist the Town Attorney and Mr. Thorn in

defending the case are Charles Rough, Town Manager; Lauren Gill, Assistant Town Manger;

Crystal Peters, Human Resources; Denis[e] Ivey, Human Resources & Risk Manager; Mark

Haunschild, former Fire Chief; and Denise Farrell, former Human Resources Manager.  Mr.

Thorn further states that he was retained to defend Captains Lawrie and Hasek at their

depositions.  At this time, he is not sure whether he will be representing anyone else in the case,

but "can confirm that most, if not all, of the other individuals listed in Plaintiff's disclosures will

be represented, if at all, by other counsel."  (Thorn Decl., Dkt. #34, Ex. 4, at 121.)

        In another letter from Mr. Thorn, dated November 9, 2010, he points out other fire

department employees, including two division chiefs and at least ten captains.  He states that he

did not intend to represent all of the captains, but that he has not talked with the other captains to

determine whether there are any conflicts in his representing them because their depositions have

1   not been noticed.  At the depositions of Captains Hasek and Lawrie, Mr. Thorn states that he

2   never instructed them not to answer any questions about the underlying facts based on the

3   attorney-client privilege.  (Id. at 127-28.)

4            On November 9, 2010, Mr. Knisbacher submitted a letter to the court, raising

5   various questions based on Mr. Thorn's letters.  Mr. Knisbacher has requested a week to research

6   and respond to these letters.  The undersigned notes that such questions should have been raised

7   in the joint statement, and as noted at the hearing, the research would be done by the court as the

8   parties failed to accomplish it prior to the hearing.  (Dkt. # 33.)

9            Based on the authority outlined above, the undersigned finds that the following

10  individuals are parties for purposes of the attorney-client privilege and for procedural discovery,

11  discussed infra: Town Manager Charles Rough, Assistant Town Manager Lauren Gill, Human

12  Resources Administrator Crystal Peters, Human Resources & Risk Manager Denis[e] Ivey, IT

13  employee Josh Marquis, and Captains Lawrie and Hasek.  Former Fire Chief Mark Haunschild,

14  and former Human Resources Manager Denise Farrell are not part of the control group and

15  therefore not clients, but as former employees, they may not waive the Town's privilege.

16            Captains not named by defendant in the aforementioned list will not be protected

17  by the attorney-client privilege or subject to Rule 34 because they are not integral to this lawsuit.

18            Plaintiff argued at hearing that fire captains are not part of the control group for

19  purposes of the attorney-client privilege.  As pointed out at hearing, this determination applies

20  only to the attorney-client privilege and procedural discovery.  The status of these employees for

21  other purposes is reserved for trial.

22            2. Parties for Purposes of Production of Documents

23            The status of the parties for purposes of production of documents during

24  discovery is also critical.  Fed. R. Civ. P. 34(a) provides that only parties are subject to this rule.

25  Rule 34 specifically provides for non-parties in a separate section.  It states: "(c) Non-parties.  As

26  provided in Rule 45, a non-party may be compelled to produce documents and tangible things or

11

1   to permit an inspection."  Rule 45, on the other hand, is specifically geared toward non-parties.

2   The 1991 amendment notes to this rule contain numerous references to non-parties.  For

3   example, the notes provide that "[t]he non-party witness is subject to the same scope of discovery

4   under this rule as that person would be as a party to whom a request is addressed pursuant to

5   Rule 34."  Rule 45 Advisory Committee Notes 1991 amendment.  Other authority has construed

6   these rules in the same manner.  Hasbro, Inc. v. Serafino, 168 F.R.D. 99, 100 (D. Mass. 1996),

7   citing Contardo v. Merrill Lynch, Pierce, Fenner & Smith, 119 F.R.D. 622, 624 (D. Mass. 1988)

8   (for purposes of discovery, Rule 34 is directed at parties and Rule 45 is directed at non-parties);

9   Swartout v. LaNore, P.A., 2009 WL 1770540 (W.D. Mich. 2009) (same); 9A Wright and Miller:

10   Federal Practice and Procedure section 2452 (1995) ("Rule 45 has a close relation to the proper

11   functioning of the discovery rules.  Most notably, a subpoena is necessary to compel someone

12   who is not a party to appear for the taking of the deposition.")

13          There are significant procedural differences between the two rules, however, such

14   as notice, time for production, location for production, and how and when responses are made.

15   Therefore, a determination of who the parties are for this litigation is important in this respect

16   also.  The individuals mentioned above in regard to the attorney-client privilege will be

17   considered parties for purposes of procedural discovery.  As such, plaintiff's subpoena duces

18   tecum served upon the party fire captains was ineffective to require production.

19          B.  Lack of a Privilege Log

20          Defendant did not provide a privilege log with its objections to document

21   requests.  Buried inside its four pages of ordinary boilerplate objections such as relevance,

22   burden, and privacy, are objections based on attorney-client privilege and work product

23   protection, but the privilege or immunity claimed is not specific as to each category.  (Knisbacher

24   Decl., Ex. 2, dkt. #24.)  In this regard, defendant states only that it located such documents in its

25   search but will not produce them.

26          Privilege logs are due at the time a discovery response is made.  See Fed. R. Civ.

P. 26(b)(5) (requiring privilege log for withheld documents), and Fed. R. Civ. P. 34(b) (objections are due within 30 days).  While not many litigants will be overly incensed about a privilege log not delivered until actual document production, at the very latest, privilege logs should be delivered, or at least promised forthwith during the meet and confer process of a discovery dispute.  Eureka v. Hartford Ins., 136 F.R.D. 179, 184 (E.D. Cal. 1991).  Under federal law, improper assertions of privilege in the privilege log, or an untimely privilege log, may (but not necessarily) result in waiver.  Burlington Northern & Santa Fe etc. v. U.S.D.C. Montana (Kapsner), 408 F.3d 1142 (9th Cir. 2005).  The court has discretion in this regard.  United States v. Construction Products Research, Inc. 73 F.3d 464, 473 (2nd Cir. 1996).  Privilege logs should contain the following information: general nature of the document, the identity and position of its author, the date of authorship, identity and position of recipients, location of the document, and reason document was withheld.  W.W. Schwarzer, A.W. Tashima & J. Wagstaffe, Federal Civil Procedure Before Trial § 11:1919.

In this case, not only did defendant fail to produce any privilege log whatsoever, but it also barely asserted its objections in its responses.  It is certainly arguable that the responses do not contain the necessary information for plaintiff to assess the claim to make a proper challenge to the privilege. (Knisbacher Decl., Ex. 2 at 2:23-24.)  Buried a couple of pages after the initial objections, however, are categories of documents for which defendant claims either attorney-client privilege or work product protection, including "communications between outside counsel and the Town Attorney, outside counsel and Town employees designated to assist outside counsel with the defense of this case, outside counsel and individual employees he has been retained to defend at deposition, and records created by outside counsel and Town Attorney that reflect their work product concerning this case."  (Id. at 4:4-10.)

Because defendant has provided some general categories for which it claims protection, its objections (barely) survive a finding of waiver.  Compare Burlington Northern & Santa Fe etc., 408 F.3d at 1148 (blanket refusals are insufficient to assert privilege), to Advisory

1   Committee Notes to 1993 Amendments to Fed. R. Civ. P. 26(b) (document by document log may

2   not be required for voluminous documents that can be described by category).  W.W. Schwarzer,

3   A.W. Tashima & J. Wagstaffe, Federal Civil Procedure Before Trial § 11:1910.  Because the

4   categories outlined by defendant are so clearly privileged, and because defense counsel Thorn

5   made representations on the record at hearing regarding the parameters of the protection claimed,

6   discretion dictates that the attorney-client privilege and the work product doctrine[7] not be waived

7   in this case.

8          The representations made by Mr. Thorn dictate what remaining documents will

9   have to be produced, to the extent they exist.  For example, Mr. Thorn stated at hearing that

10  nothing was withheld that should not have been withheld, and that the temporal limits began as

11  of the time communications began concerning this case, even before the date the complaint was

12  filed.  Documents from plaintiff's worker's compensation case that predates the instant case had

13  been previously withheld but defendant represented that these documents, to the extent not

14  privileged, would be produced.[8]  Defendant represented that these documents are the only ones

15  created after this action was filed that had not been previously produced.  Mr. Thorn confirmed

16

17  ─────────────────

18      [7] Of course, work product doctrine immunity is limited to protecting from discovery
    documents and tangible things that have been prepared by or for a party or his representative in
19  anticipation of litigation or for trial.  Fed. R. Civ. P. 26(b)(3).  Work product includes "the so-
    called 'qualified work product' (facts derived from an attorney's investigation) and the 'absolute'
20  version (the attorney's mental thought processes)."  Doubleday v. Ruh, 149 F.R.D. 601, 606, 607
    (E.D.Cal. 1993); see also Holmgren v. State Farm Mut. Auto. Ins. Co., 976 F.2d 573, 577 (9th
    Cir. 1992); Handgards, Inc. v. Johnson & Johnson, 413 F. Supp. 926, 933 (N.D.Cal. 1976).
21      The immunity from discovery is limited.  "Qualified" work product may be discovered if
    a party demonstrates a substantial need for it and an inability to obtain it by other means without
22  undue hardship.  Rhone-Poulenc, 32 F.3d 851, 863 (3rd Cir. 1994); Admiral Insurance, 881 F.2d
    at 1494.  On the other hand, "absolute," or "opinion," work product – mental impressions,
23  conclusions, opinions, or legal theories – has more stringent protections from discovery.  Id.
    "Opinion" work product may be discovered only if mental impressions are at issue and the need
24  for the material is compelling.  Holmgren, 976 F.2d at 577; Handgards, 413 F. Supp at 932-933.

25      [8] Defendant is not required to produce documents created by the worker's compensation
    attorney or at his direction for purposes of that case.  If plaintiff thinks such documents exist,
26  plaintiff should subpoena them directly.

this representation in writing after the hearing in a letter dated November 4, 2010.[9]  (Dkt. #34, Thorn Decl., Ex. 4 at 121.)  Defendant also assured the court that any documents created by the Town Attorney which are responsive to plaintiff's requests would be checked and produced to the extent they have not been produced already.  Any such documents shall be produced within fourteen days of this order.  Any other documents concerning the subject matter of this case which were previously withheld on a privileged basis other than the specific categories outlined in defendant's responses to the document requests, shall be produced within fourteen days, regardless of any claimed privilege.

C.  Electronic Discovery

Plaintiff argues that defendant should be required to produce responsive emails in their native file format.  Plaintiff also seeks computer contents used by Hasek and Lawrie during the time period in question, appropriate search terms for searching computer images, and that defendant pay the cost for performing the search.

Rule 26 states in part:

(3) **Discovery Plan.**  A discovery plan must state the parties' views and proposals on:
...
(C) any issues about disclosure or discovery of electronically stored information, including the form or forms in which it should be produced; ....

Fed. R. Civ. P. 26(f)(3)(C).

Federal Rule of Civil Procedure 34 was amended in 2006 to address electronic discovery.  It provides in part that a party may request documents, including electronically stored information, "from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form...."  Fed. R. Civ. P. 34(a)(1)(A).

---

[9]  Although Mr. Thorn stated at hearing that there may have been one communication between him and the Town Attorney before the action was filed, his letter states that it must have been a phone call because he has no documentation reflecting it.  (Id.)

The form of production is explained in the Advisory Committee Notes to the 2006 amendment:

> The rule does not require a party to produce electronically stored information in the form it [sic] which it is ordinarily maintained, as long as it is produced in a reasonably usable form. But the option to produce in a reasonably usable form does not mean that a responding party is free to convert electronically stored information from the form in which it is ordinarily maintained to a different form that makes it more difficult or burdensome for the requesting party to use the information efficiently in the litigation. If the responding party ordinarily maintains the information it is producing in a way that makes it searchable by electronic means, the information should not be produced in a form that removes or significantly degrades this feature.

Rule 34 also provides in part:

> *Producing the Documents or Electronically Stored Information.*
> Unless otherwise stipulated or ordered by the court, these procedures apply to producing documents or electronically stored information:
> (i) A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request;
> (ii) If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms; and
> (iii) A party need not produce the same electronically stored information in more than one form.

Fed. R. Civ. P. 34(b)(2)(E).

Defendant correctly argues that plaintiff did not raise the issue of electronic discovery in the Rule 26(f)(3) discovery conference or discovery plan, and the document requests did not seek production of emails in native or electronic format. Nevertheless, defendant also has a responsibility to raise the issue at the discovery conference and affirmatively state that there will be no electronic discovery if it so wishes. The parties have a mutual obligation to discuss this issue at the discovery conference.

Defendant referred to the case of Aguilar v. Immigration and Customs Enforcement Div. of U.S. Dept. of Homeland Sec., 255 F.R.D. 350 (S.D.N.Y. 2008), at the hearing for the proposition that electronic data cannot be compelled absent a previous meeting

16

1  between the parties.  In fact, the court's order was not so simplistic.  It found that because the

2  parties had not followed a mandate imposed by the Federal Rules to resolve their electronic data

3  issues in advance without court intervention, the party now seeking the data faced an uphill battle

4  in its motion to compel, causing the court to review the motion with a "heightened burden in

5  mind...." (Id. at 359.)   In considering the moving party's request for metadata, the court

6  considered multiple factors, including plaintiffs' delay in seeking the data in this format until

7  after defendants had already produced it in PDF format, and the failure to discuss the metadata at

8  the Rule 26(f) discovery conference.  Id. at 352, 359.  The court also contemplated the matter

9  practically in terms of whether defendants' retracing of their steps would yield useful information

10  beyond what plaintiffs had already received, and how many emails had been produced to

11  determine whether plaintiffs would have a difficult time reviewing and managing them.  The

12  conclusion was that defendants would not be required to re-produce the documents in a different

13  format.  Id. at 360.

14       In another case, a court distinguished Aguilar where "without the metadata,

15  [plaintiff] would be unable to confirm or contradict the timing that the documents were authored,

16  and timing was a critical issue in that matter concerning the termination of plaintiff's

17  employment." Chevron Corp. v. Stratus Consulting, Inc., 2010 WL 3489922, * 4, citing White

18  v. Graceland College Center for Professional Development, 586 F.Supp.2d 1250, 1264 (D. Kan.

19  2008).  The court added, "[f]urthermore, as the truthfulness of the defendants' actions was at

20  issue, the plaintiff contended the metadata was required to demonstrate 'that, when prepared, the

21  documents said what they say now.'" Id.

22       Here, the consideration of factors similar to those in Aguilar does not

23  automatically inure to defendant's benefit; however, upon review, metadata for only one

24  document will be required.  Plaintiff did not raise the issue of electronic data at the discovery

25  conference or in her requests for production.  See Joint Status Report, filed May 3, 2010. (Dkt. #

26  7); Knisbacher Decl., Ex. 1.  (Dkt. # 24.)  The universe of emails produced in hard copy are only

17

eight to twelve inches thick according to defendant, but four thousand pages, according to

plaintiff.  In any event, plaintiff will not be hard pressed to review them in paper form.  Plaintiff

has not shown that any other production in electronic format would result in useful information,

other than the missing and allegedly destroyed evaluation of plaintiff.[10]  As in <u>White</u>, because the

metadata for the evaluation would reveal the date it was created and whether it was later

modified, it may result in pivotal discovery to plaintiff.  Defendant shall produce the metadata for

that evaluation in all forms in existence, including emails and the evaluation itself if plaintiff has

not yet located it.

As to plaintiff's requests numbered 8, 9, and 10, which request that defendant

image the computers used by Captains Hasek and Lawrie during the time period in question, that

defendant bear the cost of such searches, that defendant provide a declaration regarding the

electronically stored information ("ESI") it has in this case, such as the type of ESI, software

used to produce the ESI, and backup methodology for ESI, these requests are denied.  Plaintiff

has not provided any specific information which would warrant such a search, especially in light

of plaintiff's failure to previously request electronic data.  The only exception is plaintiff's final

evaluation, for which further production is warranted.

D.  <u>Protective Order for Third Party Information</u>

Through request number 5, plaintiff seeks "requested information and documents

regarding relevant third parties after an appropriate protective order is in place."  This request is

too vague to be capable of resolution and is therefore denied.

\\\\\

---

[10]  A party's duty to preserve evidence exists where it knew or should have known that evidence was relevant or may be relevant to future litigation.  <u>Zubulake v. UBS Warburg LLC</u>, 220 F.R.D. 212 (S.D.N.Y. 2003).  E-mails are discoverable documents under Rule 34.  <u>Playboy Enterprises, Inc. v. Welles</u>, 60 F. Supp.2d 1050, 1053 (S.D.Ca.1999).  Not all backup tapes for e-mail must be preserved; however, when litigation is anticipated, a party may not destroy evidence which is reasonably likely to be the subject of a discovery request by an opponent. <u>Zubulake</u>, 220 F.R.D. at 217.  Once litigation is reasonably anticipated a party must put a litigation hold on e-mails and backup tapes which are accessible.  <u>Id.</u> at 218.

1    E.    Sanctions

2            Both parties' positions were not substantially justified.  Each side shall bear its

3    own costs.

4    CONCLUSION

5            Accordingly, IT IS ORDERED that:

6            1.   Defendant's motion for discovery, filed September 1, 2010, (dkt. # 10), is

7    granted in part and denied in part for the reasons set forth above.  Plaintiff shall provide

8    supplementation to the initial disclosures as described above, within fourteen days of this order.

9    Defendant's request for sanctions is denied.

10           2.   Plaintiff's amended motion to compel, filed September 22, 2010, (dkt. #17), is

11   granted in part and denied in part as set forth in this opinion.  Defendant shall produce any

12   outstanding documents as set forth herein, within fourteen days of this order.  Plaintiff's request

13   for sanctions is denied.

14   DATED: 11/18/2010

15                                                      /s/ Gregory G. Hollows

16                                                      _____
                                                        GREGORY G. HOLLOWS
17   GGH/076                                            U. S. MAGISTRATE JUDGE
     Brinckerhoff0023.dsy.wpd
18

19

20

21

22

23

24

25

26

19