IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MELISSA BRINCKERHOFF,

     Plaintiff,                              NO. CIV. S-10-0023 MCE GGH

     v.

TOWN OF PARADISE,

     Defendant.                       <u>ORDER</u>

/

        Previously pending on this court's law and motion calendar for July 14, 2011, was plaintiff's motion to compel further discovery, and for sanctions. Alden Knisbacher appeared for plaintiff. Douglas Thorn appeared telephonically for defendant, and Mark Habib appeared telephonically for witness Haunschild. Having heard oral argument and reviewed the papers, the court now issues the following order.

        This motion concerns several discovery matters; however, the only matter which will be discussed at length herein, albeit expeditiously given the discovery cutoff in this matter, is the assertion of attorney-client privilege in regard to the management meeting at which the decision to terminate plaintiff was made. Due to the exigencies involved in completing discovery prior to the July 21, 2011 cutoff, the court will issue only a summary order in all other respects.

////

1

DISCUSSION

I. Chief Haunschild's Deposition

Defense counsel and retained counsel for this witness unnecessarily obstructed and over protectively coached this witness as described at hearing. Plaintiff will be permitted one more day to depose this witness. The further deposition is scheduled for Monday, July 18, 2011, at 10:00 a.m. in Paradise. The deposition will last a maximum of seven hours.

As discussed *infra* in regard to the management meeting in which the decision was made to terminate plaintiff, further deposition will be permitted concerning this meeting as the attorney-client privilege is found to have been waived for that meeting only.

In regard to questioning regarding the Captain Drake disciplinary and performance records (Issue 6), plaintiff's request for further documents on this subject is denied; however, plaintiff may depose the witness on this subject at the now scheduled further deposition. The parties shall utilize the present protective order, as appropriate, with respect to deposition questions on confidential matters.

II. Alleged Spoliation of December 19, 2008 Evaluation

The court finds that plaintiff, at this time, has failed to show misconduct/bad faith in support of this claim. The declaration submitted by defendant in support of search efforts made to locate this document is sufficient. Plaintiff's motion is denied without prejudice in this regard.

III. Communications at Town Management Meeting

Plaintiff seeks an order permitting counsel to question, *inter alia*, witnesses Haunschild and Rough about the meeting wherein the Town decided to terminate plaintiff's employment.

Plaintiff argues that defendant has improperly invoked the attorney-client privilege at these depositions, or at least did so prematurely, and defense counsel improperly instructed witnesses not to answer on the basis of attorney-client privilege. Plaintiff argues that the entire meeting cannot be cloaked in secrecy by the mere presence of an attorney at a meeting. The

1 following standards guide the court's decision.

2
   *The party asserting the attorney-client privilege has the burden of establishing the relationship and privileged nature of the communication.* United States v. Bauer, 132 F.3d 504, 507 (9th Cir.1997). The attorney-client privilege exists where: "(1) [ ] legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived." (citation omitted).

8 U.S. v. Richey, 632 F.3d 559, 566 (9th Cir. 2011) (emphasis added).

9      The first question is whether the meeting was called for the dominant purpose of

10 seeking and obtaining business advice, as opposed to legal advice.  If so, the meeting was not

11 privileged at all.

12      One of the best statements of the law, and one the undersigned finds persuasive for

13 the federal rule as well, was set forth in 2,022 Ranch L.L.C. v. Superior Court, 113 Cal. App.4th

14 1377,  7 Cal. Rptr.3d 197 (2003).

   In certain instances it is difficult to determine if the attorney-client privilege (or work product privilege) attaches to a communication, particularly where there may be more than one purpose for that communication: " ' "Where it is clear that the communication has but a single purpose, there is little difficulty in concluding that the privilege should be applied or withheld accordingly. If it appears that the communication is to serve a dual purpose, one for transmittal to an attorney 'in the course of professional employment' and one not related to that purpose, the question presented to the trial court is as to which purpose predominates. ...'" [Citation.]" (Travelers Ins. Companies v. Superior Court (1983) 143 Cal.App.3d 436, 452, 191 Cal.Rptr. 871, italics added.) This "dominant purpose" test not only looks to the dominant purpose for the communication, but also to the *1391 dominant purpose of the attorney's work. (Aetna Casualty & Surety Co. v. Superior Court (1984) 153 Cal.App.3d 467, 475, 200 Cal.Rptr. 471 (Aetna ); Wellpoint, supra, 59 Cal.App.4th at pp. 121-122, 68 Cal.Rptr.2d 844.) Thus, "the attorney-client privilege [would] not apply without qualification where the attorney was merely acting as a negotiator for the client [citation], or merely gave business advice [citation], or was merely acting as a trustee for the client [citation]." (Aetna, supra, 153 Cal.App.3d at p. 475, 200 Cal.Rptr. 471.)

For example, in Montebello Rose Co. v. Agricultural Labor Relations Bd. (1981) 119 Cal.App.3d 1, 173 Cal.Rptr. 856 (Montebello Rose), an attorney was hired by management to negotiate with a union. In an unfair labor practices proceeding before the Agricultural Labor Relations Board, the board reviewed, in camera, communications between the attorney and management. (*Id*. at p. 31, 173 Cal.Rptr. 856.) Utilizing the dominant purpose test, the board concluded that those documents related to his role as labor negotiator were not privileged, separated them from documents related to legal advice, and allowed them into evidence. (*Id.* at pp. 31-32, 173 Cal.Rptr. 856.) In doing so, the board noted that to give attorney-client protection to the attorney's negotiation communications "would unfairly reward those organizations able to hire attorneys as their negotiators because their communications concerning pending negotiations would be protected, whereas the communications of organizations with lay negotiators would not receive protection." (*Id*. at p. 32, 173 Cal.Rptr. 856.) The Court of Appeal upheld the board's decision, reasoning that "[s]ince [management's] labor negotiations could have been conducted by a nonattorney, it is self-evident that communications with [the attorney] relating to the conduct of those negotiations were not privileged unless the dominant purpose of the particular communication was to secure or render legal service or advice." (*Ibid.*)

In Watt Industries, Inc. v. Superior Court (1981) 115 Cal.App.3d 802, 171 Cal.Rptr. 503 (Watt), the Court of Appeal held an attorney's notes were not protected by the attorney work product rule where counsel merely acted as business agent for his client. There, the attorney conveyed to plaintiff seller the clients' intention to reside in a condominium they were purchasing from plaintiff. At a deposition in an action filed by the seller the attorney refused to produce notes of that conversation with the seller. (*Id.* at p. 804, 171 Cal.Rptr. 503.) The Court of Appeal directed the superior court to compel production. The court noted the work product rule applied to documents related to legal work performed for a client and not to notes memorializing acts performed as a mere agent. In doing so, the Court of Appeal noted that "[t]o apply the privilege in such a situation would have the effect of placing a premium upon use of attorneys as business agents, nonattorneys or clients acting for themselves having no such right to protect their notes." (*Id.* at p. 805, 171 Cal.Rptr. 503.)

2,022 Ranch, 113 Cal. App. 4th at 1390-1391, 7 Cal. Rptr. 3d at 207-208.

Even assuming that *a* primary purpose of the management meeting was to have the ability to seek legal advice, if necessary, the second issue, as plaintiff has elaborated with the following cases, is to differentiate those communications amongst management which

4

recount/discuss attorney advice as opposed to discussion reflecting management decisions. In such a case, not all communications at a meeting are automatically privileged.

"[T]he fact that confidential communications within the privilege may have been made at the board meetings does not cloak the entire proceeding in secrecy." Larson v. Harrington, 11 F.Supp.2d 1198, 1201 (E.D. Cal. 1998). Business advice to take certain action may be distinguished from litigation strategy decisions and may not be attorney-client privileged. The test is whether legal advice predominates in the communication. North Pacifica, LLC v. City of Pacifica, 274 F.Supp.2d 1118, 1128-29 (N.D. Cal. 2003). Plaintiff also cites Neuder v. Battelle Pacific Northwest Nat. Laboratory, 194 F.R.D. 289 (D.D.C. 2000), for the proposition that an attorney's involvement in employment decisions such as termination is more akin to business advice than privileged legal advice, where legal review was incidental to the primary business function of the meeting.

Thus, if the Town attorney role was to participate as a decision maker in the management decision to terminate plaintiff, *none* of what was said at the meeting may have been privileged. But clearly, if the Town attorney was at the meeting for a primary purpose of giving advice on matters related to the personnel action (and was not there as part of the management decision making body), the confidential advice of counsel given at the meeting would be privileged. However, even if a primary purpose of the Town attorney at the meeting was to dispense some advice, this does not mean that *all* discussions would be privileged; the actual rationale for the plaintiff's dismissal as expressed at the meeting by management (whether or not it conformed to the advice of the attorney) would not be privileged. For all we know at this point, nothing came up that required legal advice; the Town attorney may have said nothing and was more or less the proverbial "potted plant." On the other hand, the Town attorney's legal advice may have been the central focus of all discussions. It was critical to determine the nature of the Town attorney's participation in order to determine the breadth of the applicability of the attorney-client privilege. It was critical to know the client's purpose in having the attorney present.

Thus, plaintiff commenced the questioning about what transpired at the management meeting in *precisely* the correct fashion. He asked the first foundational question necessary to see if the attorney-client provision would apply at all, or apply in part, but he was shut down immediately. Mr. Rough was asked:

> Q. – did you have any purpose in having the Town Attorney there?
>
> Let me just ask, what was your purpose in having the Town Attorney there?
>
> MR. THORN: Well, that's what I'm having trouble with....
>
> ***
>
> MR. THORN: Yes, it is privileged. What you wanted to communicate with your lawyer and why you want to communicate with him is absolutely privileged.
>
> (Rough Trans. at 59:8-17.)

The witness was instructed not to answer, and it appeared from the context of the deposition that further questions ascertaining the purpose of having counsel present would be similarly shut down.

No—this foundational question as to purpose did not seek any of the content of the advice given during the meeting; it sought to determine the purpose, dominant or not, of having the Town counsel present. The purpose of management in having counsel present was not a confidential communication. Mr. Rough was prevented from answering critical foundational questions necessary to determine if the privilege was properly assertable. Plaintiff was unable to determine whether the meeting was for the purpose of providing legal advice, for business consulting, or whether Mr. Moore was there for no reason other than to cloak the meeting with privilege. Although this witness (the Town manager) eventually did provide some testimony about why he utilized counsel in Town business, it was limited to his general statement that it was his custom to consult with Town counsel in meetings for legal consultation. (Rough Trans. at

6

62:14-19.) A review of the entire transcript indicates that Mr. Rough was instructed not to answer every question pertaining to this meeting, including the most foundational questions.

Consequently, the privilege was not supported and plaintiff was precluded from testing whether the privilege applied. Defendants had the burden to demonstrate the applicability of the privilege vis-a-vis the important meeting. Not only did defendants' counsel not demonstrate privilege applicability with *evidence* at hearing, he shut down plaintiff's attempt to inquire about the privilege applicability at deposition. Therefore the attorney-client privilege is waived in regard to this meeting.

As a result, plaintiff may question both Haunschild and Rough about this meeting without objection on this basis. The deposition of Mr. Rough shall be limited to two hours, and shall take place in Paradise on July 19, 2011, at 9:30 a.m., or on a date and time otherwise agreed to by the parties, but on or before July 21, 2011.

### IV. Document Production

The November 18, 2010 order addressed the document production. The undersigned found that although defendant's responses were improper, it did produce the documents as kept in the ordinary course of business. A further response was not ordered. (Dkt. # 35 at 6:18-25.) Defendant has now provided a sufficient response as to why its latest document production began with Bate Stamp number 2501. Plaintiff's motion is denied in this regard.

### V. Other Depositions

As stated at hearing, the court finds no improper coaching or objections in regard to the depositions of witnesses Dennis Ivey or Chris Main.

### VI. Alleged Threats

Insufficient evidence exists to establish any such threats.

### VII. Evidentiary Sanctions for Spoilation

As stated previously, this request is premature.

////

VIII. <u>Further Depositions of Lawrie, Hasek and Rough</u>

There is not sufficient time to take further depositions of these witnesses prior to the July 21 discovery cutoff, other than the previously discussed Rough deposition. Should the district court grant plaintiff's motion to extend the discovery deadline, plaintiff may renew her motion in this regard.

IX. <u>Request for Ordered Stipulation to Depose Chief Duncan Beyond Discovery Cutoff</u>

This court has no authority to make such an order in light of the district court's scheduling order.

X. <u>Request for Additional Depositions (Dwight Moore, Phil Rose, Dr. Marvin Zwerin, and Crystal Peters)</u>

As these depositions can not be taken within the remaining discovery period, plaintiff's motion is denied in this regard.

XI. <u>Supplemental Rule 26 Disclosures</u>

This request is denied as untimely.

XII. <u>Monetary Sanctions</u>

Defendant shall pay costs for Chief Haunschild's continued deposition on July 18, 2011. Litigation defense counsel can decide whether this cost will be shared with Haunschild's private counsel.

<u>CONCLUSION</u>

Accordingly, IT IS ORDERED that: plaintiff's amended motion to compel further discovery and for sanctions, filed June 28, 2011, (docket numbers 58, 62), is granted in part and denied in part as set forth in this order.

DATED: July 15, 2011

/s/ Gregory G. Hollows
UNITED STATES MAGISTRATE JUDGE

GGH:076/Brinckerhoff0023.ptf.mtn2.wpd